UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LAUREN B.,[1]

                     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

**DECISION AND ORDER**

1:19-CV-0869(JJM)

---

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Disability Insurance Benefits ("DIB").  Before the court are the parties' cross-motions for judgment on the pleadings [9, 13].[2] The parties have consented to my jurisdiction [15].  Having reviewed the parties' submissions [9, 13, 14], the action is remanded.

## BACKGROUND

        The parties' familiarity with the 995-page administrative record [4] is presumed. Plaintiff claims to have become disabled on June 15, 2014, when she was violently assaulted by a patient while working as a mental health technician.  The assault resulted in alleged back and shoulder injuries, as well as non-exertional limitations. Id., p. 910.  On February 11, 2016, she returned to substantial gainful activity as a veterinary technician. Id., p. 18.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

In June 2015, plaintiff, who was then 36 years old, filed an application for DIB arising from injuries sustained in the June 15, 2014 assault. Id., p. 85. Plaintiff underwent two surgeries for injuries allegedly resulting from the assault: a November 2014 cervical fusion for a C4-5 and C5-6 disc herniation (id., p. 342), and an April 2015 left shoulder arthroscopy. Id., p. 649.

The relevant medical opinions concerning plaintiff's physical limitations are as follows:

--   Following the assault, between July and September 2014, plaintiff's treating chiropractor, Stephen A. Novelli, D.C., repeatedly assessed plaintiff with a "100% disability". Id., pp. 297, 299, 301, 303, 307, 309, 311, 313, 317, 319, 321, 323;

--   On September 30, 2014, Physical Therapist Matthew Smith determined that plaintiff did not have "any variables that should restrict her ability to function in a clerical position at this time. I see no barriers to steady progress at 1x/wk follow-up treatments". Id., p. 326;

--   On October 22, 2014, Andrea Verrastro, FNP-C opined that plaintiff was "100% disabled from work at this time". Id., p. 893;

--   Beginning on December 23, 2014, and continuing thereafter plaintiff saw Michael Grant, M.D. for left shoulder pain. In April 2015, Dr. Grant performed left shoulder arthroscopy on plaintiff. Id., p. 649. Both before and after the surgery, Dr. Grant assessed plaintiff as "totally disabled". Id., pp. 621-22, 624, 626, 649;

--   On February 17, 2015, Donald J. Jacob, M.D. performed an independent medical examination, which concluded that she had a "[t]emporary total disability (100%) due to recent

cervical fusion surgery on 11/10/2014", that she "should not return to regular job at this time", and that she "will require more healing time from the surgery before returning to work". Id., p. 741;

-- On July 31, 2015, Christopher Ellingson, M.D. performed an independent medical examination and assessed plaintiff with a "partial, mild-to-moderate disability related to her ongoing symptoms". Id., p. 770. Dr. Ellingson concluded that plaintiff "requires light duty restrictions with no lifting, pulling or pushing greater than 15 pounds. No lifting above shoulder height with left arm." Id.;

-- On September 2, 2015, Ross Sherban, D.O. plaintiff's treating orthopedic surgeon who performed her November 2014 cervical fusion, saw plaintiff for complaints of continued neck and back pain, and assessed her with a "100% disability with regards to all work". Id., p. 823. At that time, he directed her to use a cervical bone stimulator, because the "fusion does not yet remain complete", and assessed plaintiff with "decrease[d] range of motion secondary to [the] surgery". Id., pp. 821, 823; and

-- On October 9, 2015, Donna Miller, D.O. conducted a consultative internal medicine examination, and determined that plaintiff had a "moderate limitation for heavy lifting, bending, carrying, pushing, and pulling". Id., p. 919.

The following two opinions were rendered concerning plaintiff's mental limitations:

-4-

-- On June 17, 2015, Horacio Capote, M.D. conducted a psychiatric evaluation and assessed plaintiff's Global Assessment of Functioning ("GAF") as 48.[3] Although her concentration was "diminished" and her affect was "tearful and dysphoric", her memory and knowledge were "intact" and her insight and judgment were "good". Id., p. 517. He diagnosed plaintiff primarily with PTSD, for which he recommended psychotherapy, and provided her with samples and a prescription for Brintellix;

-- On October 9, 2015, consultative psychiatric examiner Janine Ippolito, Psy.D, opined that plaintiff suffered from post traumatic stress disorder and major depressive disorder, but retained the capacity to "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitation . . . . [C]an relate adequately with others and appropriately deal with stress with moderate limitation". Dr. Ippolito also found that plaintiff's psychiatric problems are not "significant enough to interfere with the claimant's ability to function on a daily basis" Id., p. 913; and

-- On November 17, 2015, state agency review psychologist D. Bruno, Psy.D[4] concluded that plaintiff's psychiatric impairments resulted in no restriction in the activities of her daily living, maintaining social functioning and concentration, persistence or pace, or repeated episodes of decompensation. Id., p. 93. Therefore, Dr. Bruno assessed her psychiatric impairments as non-severe. Id., p. 94.

---

[3] The GAF scale found in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-4"), published by the American Psychiatric Association, states that a score between 41 and 50 reflects: "[s]erious symptoms (e.g. Suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)". DSM-4, p. 34.

[4] Dr. Bruno's first name is not stated in the record.

After plaintiff's claim was initially denied, an administrative hearing was held on March 9, 2018 before Administrative Law Judge ("ALJ") Michael Carr, at which plaintiff, who was represented by an attorney, and a vocational expert testified. Id., pp. 38-83.  On July 31, 2018, ALJ Carr issued a decision finding that plaintiff was not disabled. Id., pp. 15-32.  He determined that plaintiff's severe impairments were insomnia, a cervical spine impairment, a lumbar spine impairment, migraines, and a left shoulder impairment.  Id., p. 18.  ALJ Carr concluded that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she could only "occasionally  balance, crouch, crawl, kneel, stoop and climb ramps and stairs, but . . . could never climb ladders ropes or scaffolds", or operate a motor vehicle. Id., p. 23.  He also found that plaintiff was limited to "occasional overhead reaching".  Id.

In formulating that RFC, ALJ Carr gave "little weight" to all of the medical opinions concerning plaintiff's physical impairments, other than the opinions of Drs. Miller, Jacob and Ellingson, to which he gave "some weight".  Id., pp. 28-30.  In giving less than controlling weight to those opinions, he explained that Dr. Miller's opinion was "vague" and "did not offer specific quantifiable limitations".  Id., p. 28.  Likewise, he described Dr. Ellingson's opinion as "generally . . . consistent with his own findings", but noted that "some of his opinions were somewhat vague", and that Dr. Jacob's opinion was conducted "only a few months after [plaintiff] underwent neck surgery and two months before plaintiff underwent left shoulder arthroscopy".  Id., p. 30.

ALJ Carr further explained that plaintiff:

> "required a recovery period following each [surgery] . . . . Imaging of the . . .
> cervical spine performed after the claimant's cervical fusion showed postoperative
> changes but no interval changes. An MRI of the left shoulder
> performed prior to the left shoulder arthroscopy showed mild distal supraspinatus
> and infraspinatus tendinopathy without evidence or rotator cuff tear . . . . Even
> after recovering from her cervical fusion and her left shoulder arthroscopy, she

still had considerable neck and back tenderness and she had some spinal and shoulder range of motion deficits. However, she walked with a normal gait, retained good strength in the extremities and retained good sensation in the extremities. Indeed, during her October of 2015 consultative examination, the claimant demonstrated good strength and a normal gait and she demonstrated relatively good range of motion . . . . Of note, the claimant returned to substantial gainful activity work in February of 2016 . . . . [T]here is no evidence of a sudden change in the claimant's condition around the time that she began performing substantial gainful activity. The claimant's need for surgery, the objective imaging and the clinical strength suggests that she did not have greater exertional limitations . . . . [P]ostural limitations [were included] to account for the claimant's reduced range of motion and for the claimant's tenderness . . . . [A]n overhead reaching limitation [was included] to account for the claimant's neck and shoulder symptoms." Id., p. 28.

With respect to the medical opinions concerning plaintiff's mental limitations, ALJ Carr gave "significant weight" to Dr. Bruno's opinion, and he stated that he also gave significant weight to Dr. Ippolito's overall opinion, expect to as to her opinion that plaintiff had moderate limitations in the ability to deal with stress and relate adequately with others. Id., pp. 21-22.

Based on the RFC, ALJ Carr concluded that plaintiff was unable to perform her past relevant work, but that there were significant jobs in the national economy that she was able to perform, and therefore was not disabled from June 15, 2014 though the date of his July 31, 2018 decision. Id., pp. 30-32.

The Appeals Council denied plaintiff's request for review on May 1, 2019. Id., pp. 1-3. Thereafter, this action ensued.

**DISCUSSION**

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  *See also* Ramsey v. Commissioner of Social Security, __Fed. App'x __, 2020 WL 6372994, *1 (2d Cir. 2020) (Summary Order) (substantial evidence "is a 'very deferential standard of review - even more so than the clearly erroneous standard.'. . .  Notably, if the evidence 'is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld'").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Carr "rejected all medical expert opinions yet persisted in crafting a [RFC] Assessment based on his lay interpretation of the record". Plaintiff's Memorandum of Law [9-1], pp. 10-14. She further argues ALJ Carr used "his lay opinion to reject the mental limitations found by Dr. Ippolito at step-two of the sequential process. Id., pp. 14-15.  Therefore, she asks that the Commissioner's decision be vacated and remanded for a calculation of benefits or further administrative proceedings.  Id., p. 17

**B.     Did ALJ Carr, as a Layperson, Improperly Formulate the RFC?**

In the absence of a competent medical opinion, an ALJ, as a layperson, is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the

medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself". Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). "As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Nelson v. Commissioner of Social Security, 351 F. Supp. 3d 361, 366 (W.D.N.Y. 2018). *See* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018). *But see* Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *10 (W.D.N.Y. 2018) ("the regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion").

Although an ALJ "may not substitute his own lay opinion for those of medical experts", he/she "is free to choose between properly submitted medical opinions". Mowry v. Commissioner of Social Security, 2019 WL 4643595, *3 (W.D.N.Y. 2019). The RFC also need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 Fed. App'x 98, 101 (2d Cir. 2017) (Summary

Order)). *See* Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence"). However, an opinion must "be given enough weight to rely on it for the determination of the RFC". Waldock v. Saul, 2020 WL 1080412, *3 (W.D.N.Y. 2020).

        Here, plaintiff gave "some weight" to the opinions of Drs. Ellingson and Miller, which were sufficient to support the RFC. Importantly, plaintiff does not dispute how ALJ Carr weighed the evidence, but rather contends that by "reject[ing] all medical expert opinions", the RFC was formulated from his lay opinion. Plaintiff's Memorandum of Law [9-1], pp. 10, 12 ("[r]egardless of whether the ALJ's rejection of these opinions was proper, it still left him with a significant gap in the record"). Contrary to plaintiff's assertion, ALJ Carr did not "reject" all of the medical expert opinions. "An ALJ does not necessarily 'reject' opinion evidence when the opinion is assessed less than controlling weight and where, as here, it is evident that the ALJ's RFC determination incorporates limitations contained in that opinion." Beckles v. Commissioner of Social Security, 2019 WL 4140936, *4 (W.D.N.Y. 2019).

        Merely because ALJ Carr did not give the opinions of Drs. Miller and Ellingson "controlling weight does not mean that [he] substituted [his] own view of the medical evidence for those opinions". Cottrell v. Commissioner of Social Security, 2019 WL 201508, *3 (W.D.N.Y. 2019) ("[c]ontrary to Cottrell's assertion, the ALJ did not wholly reject [the medical] opinions; instead, she afforded them 'partial' and 'some' weight and relied on portions of them to determine Cottrell's RFC"). *See also* Dinapoli v. Berryhill, 2019 WL 275685, *3 (W.D.N.Y.

2019) ("[t]he fact that the ALJ gave no more than partial weight to the two opinions of record concerning Plaintiff's physical condition does not create the 'evidentiary gap'").[5]

Plaintiff argues that ALJ Carr used "only his lay opinion to determine how long a 'recovery period' would be for a cervical fusion". Plaintiff's Response [14], p. 3. However, that ignores ALJ Carr's reliance on the opinions of Drs. Miller and Ellingson, which were issued within a year of the surgery, and indicated that she had sufficiently recovered to have the capacity to perform at least sedentary work. Again, while those opinions may have conflicted with Dr. Sherban's opinion, plaintiff does not argue that ALJ Carr misapplied the treating physician rule in giving that opinion less than controlling weight.

Moreover, as the Commissioner notes, the medical opinions that ALJ Carr relied upon "*do not conflict with the . . . RFC finding*, which limited plaintiff to the least exertionally-demanding type of work available with additional overhead reaching and environmental limitations". Commissioner's Brief [13-1], p. 12 (emphasis in original). *See* Glab v. Commissioner of Social Security, 2018 WL 3422062, *3 (W.D.N.Y. 2018) ("[t]he fact that the ALJ's RFC conclusion was more restrictive in some aspects than Dr. Miller's opinion . . . does not establish that the ALJ was relying on his own lay opinion"); Beckles, 2019 WL 4140936, *5 ("the ALJ did not completely reject Miller's medical opinion; rather, she incorporated Miller's assessed limitations and also included greater limitations than opined by Miller").

---

[5] *But see* Marshall v. Berryhill, 2018 WL 6257430, *2 (W.D.N.Y. 2018) ("[b]y failing to give controlling, or even substantial, weight to any of the treating physicians, the A.L.J.'s RFC determination is not based on a medical opinion. An RFC determination made without the benefit of a medical opinion is insufficient to support the finding with substantial evidence").

### C.      Did ALJ Carr Impermissibly use his Lay Opinion to Reject the Moderate Limitations Assessed by Dr. Ippolito?

Plaintiff argues that at step two of the sequential analysis[6] ALJ Carr "used his lay opinion" to reject Dr. Ippolito's opinion that plaintiff had moderate limitations in stress and interacting with others based upon her daily activities. Plaintiff's Memorandum of Law [9-1], p. 14. In addressing Dr. Ippolito's opinion, ALJ Carr explained, *inter alia*, that:

> "She opined that the claimant had moderate limitations in relating adequately with others and in appropriately dealing with stress, but that claimant's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis . . . . Dr. Ippolito's opinions generally are consistent with the claimant's performance during the consultative examination and with the clinical observations noted by examiners. However, the claimant's ability to interact cooperatively with examiners and her ability to perform considerable activities of daily living suggest that she has no more than mild limitations, even in relating adequately with others and in dealing with stress." [4], p. 22.

The Commissioner does not address plaintiff's argument that it was impermissible for ALJ Carr to rely on her daily activities to discount Dr. Ippolito's opinion concerning her moderate limitations in dealing with stress and relating adequately with others. Plaintiff's Memorandum of Law [9-1], p. 14 (*citing* Gray v. Astrue, 2009 WL 790942, *10 (N.D.N.Y. 2009) ("it is improper for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform daily activities")). Instead, the Commissioner notes that Dr. Ippolito clarified in his opinion that plaintiff's mental impairments were not

---

[6]     At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Where a claimant has mental impairments, the ALJ applies a "special technique" in assessing severity, which involves rating the degree of functional limitation in four categories: 1) activities of daily living; 2) social functioning; 3) concentration, persistence and pace; and 4) episodes of decompensation. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). A mental impairment is considered non-severe if "the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified". Kohler v. Astrue, 546 F.3d 260, 266 (2d Cir. 2008).

significant enough to interfere with her ability to function on a daily basis - a finding that Dr. Bruno "explicitly" relied upon in concluding that plaintiff's mental impairments were not severe. Commissioner's Brief [13-1], pp. 14-15.

That argument is unpersuasive. "Dr. Ippolito did not define the 'ability to function on a daily basis,' an amorphous concept that could mean different things for different people in different contexts." Pettit v. Commissioner of Social Security, 2019 WL 4439294, *3 (W.D.N.Y. 2019). Since ALJ Carr failed to properly weigh Dr. Ippolito's opinion,[7] I cannot conclude that his opinion is supported by substantial evidence.[8]

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this case is remanded to the Commissioner for further proceedings consistent with this Decision and Order but is otherwise denied, and the Commissioner's motion [13] is denied.

**SO ORDERED**.

---

[7]    I express no opinion as to the ultimate weight that should be given to Dr. Ippolito's opinion or how Dr. Ippolito's opinion (when properly weighed) will impact, if at all, the weight given to Dr. Bruno's opinion.

[8]    Among the arguments set forth under the heading "The ALJ Rejected All Medical Opinions Yet Persisted in Crafting a [RFC] Assessment Based on his Lay Interpretation" (plaintiff's Memorandum of Law [9-1], p. 10), plaintiff raises an unrelated argument - "the ALJ appears to fault Plaintiff for returning to work in February 2016". Id., p. 15. To the extent that this argument is intended to challenge ALJ Carr's credibility determination, it is not persuasive. As opposed to finding fault in plaintiff returning to work, ALJ Carr rationally explained, based on his other findings, that "there is no evidence of a sudden change in the claimant's condition around the time that she began performing substantial gainful activity". [4], p. 28.

-13-

Dated: December 30, 2020

                                                                             /s/ Jeremiah J.McCarthy  
                                                                             JEREMIAH J. MCCARTHY  
                                                                             United States Magistrate Judge